**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

_____

| | |
|---|---|
| **MARLO DICKSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )          **No. 20-2814-SHM-tmp** |
| | ) |
| **NPSG GLOBAL, LLC, and** | ) |
| **AMAZON.COM SERVICES, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

_____

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL**
_____

Before the court by order of reference is defendant NPSG Global, LLC's ("NPSG") Motion to Compel, filed on April 18, 2022. (ECF No. 85.) Plaintiff Marlo Dickson responded to the motion on May 13, 2022. (ECF No. 91.) For the reasons below, the defendant's Motion to Compel is GRANTED in part.

## I.   BACKGROUND

Dickson alleges race and sex discrimination against her former employers, NPSG and Amazon. In September 2018, Dickson was hired by True Blue, Inc. to "work for Defendant NPSG as a traveling warehouse worker in Amazon facilities in locations across the country[.]" (ECF No. 59 at 2.) The exact details of the discrimination faced are not relevant to this motion, but Dickson alleges that she was sexually harassed by coworkers, that her complaints about the harassment were improperly addressed, that

she suffered physical and mental injuries as a result of the defendant's failure to properly address the discrimination, and that she was ultimately terminated in violation of Title VII of the Civil Rights Act of 1964. (Id. at 2-6.)

Dickson filed her complaint against the defendants on November 11, 2020. (ECF No. 1.) The case proceeded to discovery, and she sat for a deposition on February 24, 2022. (ECF No. 85-2 at 1.) During her deposition, counsel for NPSG asked Dickson about an interrogatory response she had provided indicating that she began working at a Kroger grocery store in December 2020, after her employment with the defendants ended. (Id. at 2.) Dickson testified that she worked there from December 2020 until around "June of 2021." (Id.) Counsel for NPSG then asked Dickson why her employment with Kroger ended, and Dickson testified that "[i]t was just a conflict with management." (Id.) When counsel asked for clarification about whether Kroger had asked her to leave or whether she had left on her own, Dickson testified that "they initially asked me to leave, but I didn't go any further." (Id.) When counsel asked what had led to the conflict, Dickson stated that it was "Racism . . . By management, yes, manager and – yes management team, definitely." (Id.)

At this point, Dickson's counsel objected to the relevance of the line of questioning but told Dickson that she could answer. (Id.) As NPSG's counsel continued asking for details regarding her

-2-

time at Kroger, Dickson's counsel again objected on relevance grounds. NPSG's counsel argued that "[t]here certainly is relevance here, because [Dickson's] perception - there's a race harassment claim in this case, and so anything that has to do with her – what she perceives to be racial conduct goes to her perception, and so we are entitled to explore this in discovery." (Id. at 3.) Dickson's counsel disagreed and stated that "we're going to stop with this," and NPSG's counsel stated that they would move on and "leave it open in case we decide to pursue a motion[.]" (Id.) Some questioning on this topic continued, with Dickson ultimately stating that she had been asked to leave by the manager whom she had reported for race discrimination, "[f]or tearing up an Incident Report[.]" (Id.)

On March 2, 2022, NPSG's counsel emailed Dickson's counsel regarding outstanding issues from the deposition, and the conversation turned to the objections lodged about Dickson's experience at Kroger. The next day, NPSG's counsel sent a letter stating that they "believe that objection is not proper and that questioning on those subjects is within the scope of discovery." (ECF No. 85-3 at 3.) Specifically, they stated that "the questioning may lead to facts that are relevant to the jury's assessment of the credibility of Ms. Dickson's perceptions and her testimony on the subjects of allegedly racial or sexually based

conduct." (Id.) Dickson's counsel did not agree to continue the deposition.

NPSG then filed the present motion on April 18, 2022. (ECF No. 85.) In the motion, they seek to "compel Plaintiff to provide testimony on specific subjects," specifically "circumstances at both past and subsequent employers where there was reason to believe, and in one instance Plaintiff confirmed, that she believed she had experienced unlawful discrimination." (ECF No. 85-1 at 1.) NPSG believes these topics to be relevant "both from a liability and mitigation standpoint." (Id.) Dickson responded on May 13, 2022, arguing that these topics are not relevant to the present case and that her case focuses "almost entirely on information regarding Defendants' investigation of the conduct that occurred - not whether it was racist or sexist - and their hiring, firing and wages paid to other employees." (ECF No. 91 at 2.)

## II.  ANALYSIS

### A.  Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct.

10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure 37, a party may move to compel a discovery response where a deponent fails to answer a question asked at their deposition. Fed. R. Civ. P. 37(a)(3)(B)(i).

**B.  Relevance**

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." Stewart v. Orion Federal Credit Union, 285 F.R.D. 395, 398 (W.D. Tenn. 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). NPSG argues that Dickson's testimony regarding her

-5-

subsequent employment at Kroger and reason for leaving that job is relevant for two reasons. First, they argue it is relevant because the jury will assess Dickson's credibility at trial, and whether she "tends to regard workplace circumstances she does not like as racially or sexually discriminatory when the circumstances would not so indicate to a reasonable person" bears on her credibility. Second, they argue that whether she was fired from or quit her job at Kroger is relevant to whether she properly mitigated her damages.

Courts have found that records of *prior* lawsuits or complaints of discrimination by a plaintiff against their employer can be relevant, as they may go towards a plaintiff's credibility at trial, but that such evidence must "tend to show something other than a plaintiff's tendency to sue[.]" Gastineau v. Fleet Mortg. Corp, 137 F.3d 490, 495-96 (7th Cir. 1998). "Prior frivolous claims of [] discrimination and harassment could be admissible as they might bear on Plaintiff's credibility at trial." Stokes v. Xerox Corp., No. 05-CV-71683-DT, 2006 WL 6686584, at *4 (E.D. Mich. Oct. 5, 2006) (citing Maxwell v. Health Ctr. of Lake City, Inc., No. 3:05-CV-1056-J-32MCR, 2006 WL 1627020 (M.D. Fla. Jun. 6, 2006)); see also Pounds v. Bd. of Trustees, 215 F.3d 1320 (Table) (4th Cir. 2000) (prior claims of racial discrimination against two previous employers admissible as impeachment evidence at trial to show bias or motive). Other cases have found a plaintiff's

-6-

subsequent employment records and personnel files relevant as well. See e.g., Stewart, 285 F.R.D. at 399 n.5 ("To the extent that there are records regarding the reason for plaintiffs' termination from a subsequent employer . . . such records are also discoverable.") (citing Hite v. Peters, No. 07-4492-RMB-AMD, 2009 WL 1748860, at *1, *4 (D.N.J. Jun. 19, 2009)). Further, it is well settled that the reason for a subsequent termination is relevant to the issue of mitigation. See Cornell v. Jim Hawk Truck Trailer, Inc., 298 F.R.D. 403, 407 (N.D. Iowa 2014) (citing Fiedler v. Indianhead Truckline, Inc., 670 F.2d 806, 809 (8th Cir. 1982)); Shirazi v. Childtime Learning Ctr., Inc., No. CIV07-1289, 2008 WL 4792694, at *3 (W.D. Okla. Oct. 31, 2008); Noble v. Ruby Tuesdays Restaurants, Inc., No. Civ. A. 2:06-259, 2007 WL 3125131, at *2 (S.D. Ohio Oct. 23, 2007); E.E.O.C. v. Woodmen of the World Life Ins. Soc., No. 8:03-CV-165, 2007 WL 649298, at *5 (D. Neb. Feb. 1, 2007).

The undersigned finds that the testimony sought is relevant. Dickson's testimony regarding other discrimination may bear on her credibility, and the exact nature of her separation from Kroger, including the reasons behind it, are relevant to any mitigation defense NPSG may have. Defendant thus seeks this information for reasons beyond establishing a mere propensity to sue. Further, NPSG was entitled to ask these questions, subject to objection, and receive answers from Dickson at her deposition, which her

counsel prevented. Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.").

NPSG has demonstrated that the testimony is relevant and that they are entitled to answers regarding 1) the nature of Dickson's separation from Kroger; and 2) the details regarding that separation, including how it came about and any alleged discrimination she suffered. However, the scope of the relevant inquiry is still narrow, and Dickson has already sat for a full deposition. In their motion, NPSG seeks three hours of additional time because "the Plaintiff tends to provide very long responses to questions." (ECF No. 85-1 at 4-5.) In order to narrow the scope and minimize the burden, the undersigned hereby ORDERS that the plaintiff be deposed for one additional hour, so that NPSG can inquire into the above listed topics. To further minimize the burden to all parties, this deposition may be conducted by video if Dickson so desires.

### III. CONCLUSION

For the above reasons, defendant's Motion to Compel is GRANTED in part.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM

-8-

Chief United States Magistrate Judge

May 24, 2022
Date